**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ANALYTICAL TECHNOLOGIES, LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**LITTLE CAESAR ENTERPRISES, INC.,**<br><br>    **Defendant.** | **CASE NO. 2:24-CV-00090-JRG-RSP**<br><br>**JURY TRIAL DEMANDED** |

**LITTLE CAESAR ENTERPRISES, INC.'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

I.   STAGE AND NATURE OF PROCEEDINGS ........................................................ 1

II.  SUMMARY OF THE ARGUMENT ................................................................. 1

III. STATEMENT OF THE ISSUE ........................................................................ 2

IV.  STATEMENT OF THE FACTS .......................................................................... 2

V.   LEGAL STANDARDS ................................................................................... 4

    A.   Legal Standard for Dismissal Pursuant to Rule 12(b)(6) ................................. 4

    B.   The Law of 35 U.S.C. § 101. ......................................................................... 5

VI.  ARGUMENT ................................................................................................. 6

    A.   The '083 Patent is Invalid Under 35 U.S.C. § 101 ........................................ 7

        1.   *Alice* Step 1: The '083 Patent is directed to the abstract idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff. .......................... 7

        2.   *Alice* Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed. ............................................................... 13

        3.   The remaining claims are also abstract and contain no inventive concept. .............. 17

    VII. CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Advanced Cardiovascular Sys. V. SciMed Life Sys.*,
    988 F.2d 1157 (Fed. Cir. 1993)....................................................................................4

*Affinity Labs of Tex., LLC v. Directv, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)...........................................................................7, 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014).............................................................................. *passim*

*Amacker v. Renaissance Asset Mgmt.*,
    LLC, 657 F.3d 252 (5th Cir. 2011)..............................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).......................................4

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
    687 F.3d 1266 (Fed. Cir. 2012)...................................................................................5

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)...........................................................................14, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....................................4, 5

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)...................................................................14, 16, 17

*Bilski v. Kappos*,
    561 U.S. 593 (2010)................................................................................................5, 6

*Boom! Payments, Inc. v. Stripe, Inc..*,
    839 F. App'x 528 (Fed. Cir. 2021)........................................................................9, 15

*Breen v. Tex. A&M Univ.*,
    485 F.3d 325 (5th Cir. 2007) .....................................................................................4

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019)..................................................................................6

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019).................................................................10, 11, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
    776 F.3d 1343 (Fed. Cir. 2014)...........................................................................6, 12

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980) ................................................................................5

*Diamond v. Diehr*,
450 U.S. 175 (1981) ................................................................................6

*Epic IP LLC v. Backblaze, Inc.*,
351 F. Supp. 3d 733 (D. Del. 2018) (Bryson, J.) ..............................2, 11

*Finjan, Inc. v. Blue Coat System, Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ..............................................................7

*Fort Props., Inc. v. Am. Master Lease LLC*,
671 F.3d 1317 (Fed. Cir. 2012) ..............................................................6

*Innovation Scis., LLC v. Amazon.com, Inc.*,
778 F. App'x 859 (Fed. Cir. 2019) ..................................................1, 8, 9

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015) ............................................................11

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 829 (E.D. Tex. 2014) ....................................................11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012) ............................................................................6

*Parker v. Flook*,
437 U.S. 584 (1978) ................................................................................6

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ..........................12

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ..............................................................7

*Simio, LLC v. FlexSim Software Prod., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ............................................................12

*In re TLI, Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ....................................................9, 14, 15

*Ultramercial, Inc. v. Hulu*,
LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ......................5, 13, 17

**Statutes**

35 U.S.C. § 101 ...................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ *passim*

## I.      STAGE AND NATURE OF PROCEEDINGS

On February 9, 2024, Plaintiff Analytical Technologies LLC ("Analytical Technologies" or "Plaintiff") filed this lawsuit accusing Defendant Little Caesar Enterprises, Inc. ("LCE" or "Defendant") of infringing U.S. Patent No. 8,799,083, entitled "System and Method for Managing Restaurant Customer Data Elements" (the "'083 Patent" or "Asserted Patent"). Plaintiff accuses LCE's Little Caesar's mobile application of infringing at least Claim 1 of the '083 Patent. (Dkt. 1 "Compl." at ¶¶ 37–56.).

## II.     SUMMARY OF THE ARGUMENT

The claims of the Asserted Patent fail both steps of the *Alice* inquiry. At Step One, the claims are directed to the abstract idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff. *See Innovation Scis., LLC v. Amazon.com, Inc.,* 778 F. App'x 859 (Fed. Cir. 2019) (holding that the "online method for a payment server to support online buying over the Internet" is an abstract idea). And at Step Two, the claims do not contain any inventive concept sufficient to confer patent eligibility on the claimed abstract idea.

The claims of the Asserted Patent merely describe the abstract idea of paying for a restaurant service using a mobile phone while not interacting with the restaurant staff. *See e.g.*, '083 Patent, Cl. 1. Paying for a service without interacting with the provider of the service, however, is a long-standing aspect of human existence. Long before using mobile phones to pay for such services, these types of transactions occurred without the assistance of the provider of the service. The '083 Patent itself admits that online payment methods already existed as of the priority date of the patent. *Id*. at 7:7-25. For example, the specification admits that it was known to use "PayPal" to pay for transactions. *Id*. at 7:20. As another example, customers used Ticketmaster and Moviefone to purchase tickets to events and movies well before the priority date of the '083 Patent. The claims of the Asserted Patent simply leverage generic mobile phones, performing

1

conventional computing functions, and therefore do not contain an inventive concept sufficient to confer eligibility.

The claims of the Asserted Patent also lack disclosure of an unconventional system to solve the problem they identified. Nor do they claim a particular mechanism for improving computing systems or a mobile phone. Claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018) (Bryson, J.). The claims of the Asserted Patent are directed to an abstract concept, not a specific implementation of that concept. They are therefore invalid for failure to claim patent-eligible subject matter.

Resolving this issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, LCE thus requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## III.    STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the Asserted Patent are directed to the abstract idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff. The claims of the Asserted Patent do not include any inventive concept beyond that abstract idea. Should the Court therefore dismiss Plaintiff's claims pursuant to Rule 12(b)(6)?

## IV.    STATEMENT OF THE FACTS

The Asserted Patent relates to "customer service management systems and methods, and more specifically to restaurant customer service management systems and methods." '083 Patent, 1:21-24. The specification acknowledges that "online payment service[s], such as PayPal," were

known in the industry. *Id.* at 7:19-20. The '083 Patent identifies the following problem with restaurant systems:

> Current restaurant systems, although proven, do not meet the changing needs of this new customer base. Restaurants antiquated systems are cumbersome, lack modern technology, and do not provide entertainment during waiting periods. Furthermore, they are very dependent on management and control from restaurant staff.

*Id.*, 1:47-54. Thus, the purported goal of the alleged invention was to provide "new methodologies for managing the customer experience . . . to meet the changing needs." *Id.*, 10:24-25.

The '083 patent has twenty claims: independent claims 1, 11, and 16, and dependent claims 2-10, 12-15, and 17-20. The independent claims are of similar scope, in that they involve restaurant bill handling without interaction with the restaurant staff. Claims 1 and 16 are directed to methods while Claim 11 is directed to a system. Both claims 1 and 11 require uploading a bill to a mobile or wireless device and paying said bill without interaction with the restaurant staff. Claim 16 also includes the step of splitting the bill. Claim 1, reproduced below, is representative:

> 1. A method, comprising:
>
> receiving at least one request of at least one service related to a restaurant menu from a mobile phone;
>
> uploading, by a system of a restaurant, a bill for the at least one service to the mobile phone; and
>
> performing a self-checkout by a at least one customer whereby payment for the at least one service is submitted by the at least one customer via the mobile phone to the system, wherein the payment is submitted without interaction with staff associated with the restaurant.

'083 Patent, Cl. 1 ("Claim 1"). The claim describes the basic and longstanding practice of paying for a restaurant service using a mobile phone without interacting with the restaurant staff, and it does so using only generic, routine, and conventional computing concepts and equipment, such as generic mobile phones and a generic encryption protocol. For example, the patent describes

terminal devices as including "handheld computers, such as Personal Digital Assistants (PDAs), palm-sized and clam shell computers . . . smart phones, mobile phones, wrist PDAs, thin clients, kiosks, tablet computers, desktops PCs, internet appliances, and other device know [sic] to those skilled in the art." *Id.* at 4:5-10. The restaurant system is also only generically defined by its functions. *See id.* at 3:61-4:5; 4:27-61. The basic steps are: (1) receiving a request for a restaurant service from a mobile phone, (2) uploading a bill for the service, and (3) paying for the service without interacting with the restaurant staff.

## V.    LEGAL STANDARDS

### A.    Legal Standard for Dismissal Pursuant to Rule 12(b)(6)

A complaint can be dismissed under Rule 12(b)(6) if the factual allegations it contains, taken as true, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt.*, LLC, 657 F.3d 252, 254 (5th Cir. 2011). In other words, under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. "Under Rule 12(b)(6), federal courts are required to dismiss claims based upon invalid legal theories even though they might otherwise be well-pleaded." *Breen v. Tex. A&M Univ.*, 485 F.3d 325, 336 (5th Cir. 2007). Similarly, the Federal Circuit held that "[a] motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys. V. SciMed Life Sys.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). To avoid dismissal under Rule 12(b)(6), "plaintiffs must plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). As with any 12(b)(6) motion to dismiss, courts accept well-pled

factual allegations as true, but plaintiffs "must allege a plausible entitlement to relief in order to withstand the motion." *Twombly*, 127 S.Ct. at 1967–69.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

## B.    The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id*. at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice

amounts to significantly more than a patent upon the ineligible concept itself." *Id*. (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Furthermore, the use of a generic hardware or computer technology to perform well-understood, routine, and conventional activities commonly used in industry, does not make a claim patent eligible." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope."). Although factual allegations are generally presumed true in the context of a Rule 12(b)(6) inquiry, any such allegations about the inventive nature of the claims cannot be "wholly divorced from the claims or the specification." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).

## VI. ARGUMENT

The claims of the Asserted Patent are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. At Step One, each of the claims is directed to the abstract idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff. At Step Two, none of the claims contains an "inventive concept sufficient to ensure that the patent in

practice amounts to **significantly more** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Plaintiff cannot state a claim upon which relief may be granted, LCE respectfully requests that the Court dismiss this case with prejudice. FED. R. CIV. P. 12(b)(6).

### A.     The '083 Patent is Invalid Under 35 U.S.C. § 101.

#### 1.     *Alice* <u>Step 1</u>: The '083 Patent is directed to the abstract idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff.

Claim 1 is directed to the abstract idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff. Assessing whether Claim 1 is directed to an abstract idea begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). It is necessary to examine a patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). And a court should strip away "excess verbiage" in order to determine what the claim is directed to. *Affinity Labs of Tex., LLC v. Directv, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016). Here, the '083 Patent is directed to paying for a restaurant service using a mobile phone. '083 Patent, Cl. 1. Indeed, the claim requires three basic steps of: (1) receiving a request for a restaurant service from a mobile phone, (2) uploading a bill for the service, and (3) paying for the service without interacting with the restaurant staff. *Id.*

The idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff is a fundamental practice that can be carried out manually. In essence, the patent claims the fundamental activity of not paying an establishment directly for a service. Take, for example, the admittedly known concept of a customer using Paypal to pay a seller. *Id.* at 7:19-20. The customer would go through a checkout process, select Paypal as the payment method, and

then complete the transaction. The customer would not need to interact with the seller at all during this transaction. This captures the fundamental concept of the Asserted Claim.

The Federal Circuit's decision in *Innovation Sciences* is instructive. In *Innovation Sciences*, the Federal Circuit held claims directed to "securely processing a credit card transaction with a payment server" to be abstract. *Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859, 863 (Fed. Cir. 2019). The claims at issue in *Innovation Sciences* involved using online payment systems to securely pay for a transaction. *Id.* at 863. This is similar to Claim 1, in which a customer uses a mobile phone to pay for a bill. '083 Patent, Cl. 1, 20:7–58. In *Innovation Sciences*, the court held that the claims were "an idea, having no particular concrete or tangible form." *Innovation Scis.*, 778 F. App'x at 863 (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)). The court further explained that the "recitation of servers and an established financial channel serves to 'limit[ ] the field of use of the abstract idea to a particular existing technological environment,' but it 'does not render the claims any less abstract.'" *Id.* (*citing Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016)). In a similar manner, Claim 1 is simply directed to using a mobile device to pay for restaurant bill without interacting with the anyone at the restaurant, *i.e.*, an idea without a tangible form that is only limited in that its used on mobile phones. '083 Patent, Cl. 1.

The *Innovation Sciences* court further addressed what constitutes "a specific improvement in the capabilities of computing devices." *Innovation Scis.*, 778 F. App'x at 863 (*citing Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018)). The court found that the alleged invention does not "improve the payment server or the server on which the item for purchase is listed. Instead, it simply claims the idea of switching to a more secure server for payment processing. Neither the claims nor the specification recite any specific way to carry

out such a switch." *Innovation Scis.,* 778 F. App'x at 863. The same is true here—the alleged invention does not improve mobile phones or payment systems, it simply claims the idea of using the mobile phone to pay a restaurant bill without interacting with restaurant staff.

Recently, other online payments methods and systems were also found patent ineligible. In *Boom! Payments*, the court analyzed claims directed to "payment escrow." *Boom! Payments, Inc. v. Stripe, Inc..*, 839 F. App'x 528 (Fed. Cir. 2021). The court specifically found that "the claims are reminiscent of those at issue in *Alice*" because the claim described the use of a third party to facilitate payments. *Id*. at 532. Hence, the court found that the claims, where "payment is held by the third-party Internet-based computer system and released to the seller only upon the fulfillment of a condition" to be directed to an abstract idea, as the claims "only explicate the necessary steps of an escrow arrangement and do not change the direction of the claims." *Id*. The court also found that the claims did not improve computer functionality. *Id.*

Claim 1 here is similar to those found invalid in *Boom! Payments* in that they are directed to using a computing device to make a payment using an intermediary without having to interact with the other party to the transaction. Additionally, Claim 1 uses conventional components and is not directed to an improvement in computer functionality. *See generally* '083 Patent, Cl. 1. Thus, the claims here are also directed to an abstract idea.

The claim language confirms that Claim 1 is directed to the abstract idea of paying for a restaurant service without interacting with the restaurant staff using a mobile phone. The claim recites generic hardware including "a mobile phone" and "a system." '083 Patent, Cl. 1. And nothing in the claim language is concerned with improving the functioning of any of the hardware from a **technical** standpoint, which is why the claimed components are described "in vague terms without any meaningful limitations." *In re TLI, Commc'ns LLC Patent Litig*., 823 F.3d 607, 612–

13 (Fed. Cir. 2016) ("the focus of the patentee and of the claims was not on" improved hardware because the specification described the functionality of the hardware "in vague terms without any meaningful limitations").

The Federal Circuit's decision in *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) is also instructive. The *ChargePoint* claims were directed to a communication network to facilitate finding a recharging facility, controlling the facility, and paying for the electricity consumed. *Id*. at 766. But the claim described this process only in high-level functional terms, such as "a control device to turn electric supply on and off" and "a transceiver to communicate requests." *Id*. The specification never even suggested that the charging station itself would operate differently or that it was "improved from a technical standpoint." *Id*. at 768. The Federal Circuit therefore concluded that the risk of preemption was high because the broad claim language "would cover any mechanism for implementing network communication on a charging station." *Id*. at 770. It further noted that, "[e]ven if ChargePoint's specification had provided, for example, a technical explanation of how to enable communication over a network for device interaction (which, as discussed above, it did not), the claim language here would not require those details." *Id*. at 769–70.

Like the claims in *ChargePoint*, the applicant of the '083 Patent failed to disclose the details of how to implement a system for paying for a restaurant service using a mobile phone without interacting with the restaurant staff. Instead, the applicant described the system only at a high level of generality. For example, the system of Claim 1 is able to "upload[] a bill for the at least one service to the mobile phone." '083 Patent, Cl. 1. But nothing in Claim 1 explains how the mobile device must be programmed to Upload the bill from the system. Moreover, nothing suggests that the mobile device or any other component is "improved from a technical standpoint."

*See ChargePoint*, 920 F.3d at 768. In other words, the broad claim language covers only the resulting system the applicants envisioned, but not how to achieve it. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation.").

By only claiming the desired result— paying for a restaurant service using a mobile phone without interacting with the restaurant staff —while not describing any specific roadmap for doing so, Claim 1 of the '083 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348. Indeed, the claim risks preempting *all* methods or systems for paying for a restaurant service using a mobile phone without interacting with the restaurant staff. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective").

Plaintiff alleges that the claims of the '083 Patent "do not merely recite a generic way of processing an order for food items and/or beverages" and that "[a]lternative ways exist and are known for processing an order." Compl. at ¶¶ 34-35. But these bare allegations, without citing any support in the '083 Patent, merely reiterate the concept of paying for a restaurant service using a mobile phone and are insufficient to support Plaintiff's argument that the claims do not preempt all fields. *See id.* at ¶ 34 ("[T]he claimed inventions are directed to a specific way of ordering and paying for food items via a customer's mobile phone . . ."). The law is clear that claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v.*

*Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). Such is the situation with the Asserted Claim.

The rest of Plaintiff's allegations regarding patent eligibility similarly fail. Plaintiff argues that the claims of the '083 Patent are directed to patentable subject matter, but merely recites the language of Claim 1 of the patent. Compl. at ¶ 29. Plaintiff goes on to argue that the claims are "not directed to an abstract idea or law of nature" but again merely reiterates, without citation to the '083 Patent, the alleged benefit without explanation of how the patent achieves that benefit. *See id.* at ¶¶ 35-33. Finally, Plaintiff concludes, again without citation to the '083 Patent or any other explanation, that "the claimed method could not possibly be performed mentally or by hand." *Id.* at ¶ 36. The Court need not credit these conclusory allegations. *See Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").

Claim 1 thus fails *Alice* step one because it is directed to a patent-ineligible abstract idea. *Alice*, 134 S. Ct. at 2355. Claim 1 of the '083 Patent is representative of all the claims because all the claims are "substantially similar and linked to the same abstract idea." *See Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (holding that district court's analysis of representative claims was appropriate where claims were "substantially similar and linked to the same abstract idea").[1] Accordingly, all of the claims of the '083 Patent are directed to an abstract idea.

---

[1] *See also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea.").

2.      *Alice* **Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed.**

Because Claim 1 of the '083 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

The problem identified by the applicant was that "current restaurant systems, although proven, do not meet the changing needs of this new customer base. Restaurants antiquated systems are cumbersome, lack modern technology, and do not provide entertainment during waiting periods." '083 Patent, at 1:64–66. The applicant further stated that current systems "are very dependent on management and control from restaurant staff." *Id*. The applicant thus proposed a solution independent of interacting with restaurant staff. *Id*., Cl. 1.

The solution, however, is claimed and implemented via the conventional application of generic means. There is no unconventional feature or activity disclosed in Claim 1. This is especially true given that no special programming or improved component is claimed. All that is disclosed to perform the functionality of paying for a restaurant service without interacting with the restaurant staff using a mobile phone is a "mobile phone" and a "system of a restaurant." *Id*.

Further, none of the claim limitations disclose an inventive concept. The first limitation recites receiving a request for service related to a restaurant. The second limitation recites uploading a bill for the service to a cellphone. And the third limitation recites performing a self checkout without interacting with the restaurant. This is no different than the steps of ordering an

item online, going to the checkout page, and paying using Paypal, which the patent admits was known. *Id*. at 7:19-20. Thus, Claim 1 does not disclose an inventive concept.

Additionally, Claim 1 is devoid of any technical explanation as to how to implement the purported invention. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). "At *Alice* step two, it is [thus] irrelevant whether [paying for a restaurant service using a mobile phone without interacting with the restaurant staff] may have been non-routine or unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1290–91 ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (claims lacked an inventive concept because they "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components"); *Affinity Labs of Tex.*, 838 F.3d 1262 (claim lacked an inventive concept because it "simply recites the use of generic features . . . as well as routine functions . . . to implement the underlying idea"). Adding generic functionality to an existing mobile device does not amount to an inventive concept as a matter of law. *See Alice*, at 2359-60.

Claim 1 fares no better when its limitations are viewed in combination. The applicant did not describe how the claimed system "is a **technical** improvement over prior art." *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (emphasis added). The applicant sought only to allow a customer to pay a restaurant bill without interacting with the restaurant staff. '083 Patent, Cl. 1. He did so by uploading a bill to a mobile phone and allowing the customer to do a self-checkout. *See id*. This merely adds generic payment functionality to the mobile device *See ChargePoint*, 920 F.3d 759, 774-75 (rejecting plaintiff's

14

reliance on *Bascom* because the claims "do not improve the technology" but instead "merely add generic networking capabilities to [the claimed components] and say 'apply it'").

Considering the limitations in combination "add[s] nothing . . . that is not already present when the [limitations] are considered separately." *Alice*, 134 S.Ct. at 2359 (internal brackets and quotation marks omitted). There is nothing "inventive" about using a mobile device and adding generic payment functionality. Claim 1 is devoid of any technical explanation as to how to implement the invention and thus provides no inventive concept. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention").

The *Boom! Payments* case is once again instructive. There, the court analyzed the similar payment related claims under the second step of *Alice* and found that they did not disclose an inventive concept. *Boom! Payments*, 839 F. App'x at 533. The court specifically noted that "allegations that the limitations of its claims are not routine or conventional do not preclude dismissal under Rule 12(b)(6)." *Id*. The court also noted that when the "order and timing of the claim elements are merely the necessary steps of executing payment escrow [they] do not constitute an inventive concept." *Id*. Thus, the court concluded that the patent-in-suit did not "recite an inventive concept sufficient to transform the claims into patent-eligible subject matter." *Id*. Similarly here, the claims of the Asserted Patent are directed to conventional payment technology and recite only generic mobile phone and server capabilities for performing the steps of making a payment to a restaurant. '083 Patent, Cl. 1. Thus, the claims of the '083 patent fail to disclose an inventive concept.

Unlike in *Berkheimer*, this case does not present any factual disputes requiring resolution before the Court can decide this § 101 issue. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer*, 881 F.3d at 1369. The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, there is no need for fact discovery at all because neither Claim 1 nor the specification of the Asserted Patent describes any unconventional components or the use of generic components in some unconventional manner, and no amount of fact discovery can change that.

As discussed above, the purported advance of Plaintiff's claims is the ***idea*** of paying for a restaurant service using a mobile phone without interacting with the restaurant staff. '083 Patent, Cl. 1. But Claim 1 of the '083 Patent does not describe any ***particular mechanism*** for achieving the result. *See Secured Mail.*, 873 F.3d at 912 (claims fail *Alice* step two where "[t]he claim language does not provide any specific showing of what is inventive about the [limitation in question] or about the technology used to generate and process it"). The recited limitations— whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea.

Because it is altogether devoid of any "inventive concept," Claim 1 of the '083 Patent is thus patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### 3.     The remaining claims are also abstract and contain no inventive concept.

The remaining claims of the Asserted Patent recite the same abstract idea: paying for a restaurant service using a mobile phone without interacting with the restaurant staff. Indeed, the remaining independent claims of the Asserted Patent are substantially similar to the Asserted Claim. Because these independent claims cannot be meaningfully distinguished from Claim 1 of the '083 Patent, they are ineligible for the same reasons.

The dependent claims fare no better. The only differences relate to token or insignificant pre- or post-solution activity— for example, putting customers on a wait list (Claims 1, and 6), and paging (Claims 3, and 19). *See Ultramercial*, 722 F.3d at 1346 ("claim . . . will not be limited meaningfully if it contains only insignificant or token pre or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment"). Indeed, all the dependent claims are written in the same or similar high-level of generality as in Claim 1 of the '083 Patent. None of these limitations is sufficient to raise the claims beyond the abstract idea to which they are directed.

Like Claim 1 of the '083 Patent, the limitations in the remaining claims are directed to the same abstract idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff and are altogether devoid of any "inventive concept." They are thus patent ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60; *see also Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative where there is no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim").

## VII.   CONCLUSION

For the foregoing reasons, LCE respectfully requests that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, LCE requests dismissal with prejudice.


Dated: March 4, 2024                    FISH & RICHARDSON P.C.

By:  */s/ Neil J. McNabnay*
      Neil J. McNabnay
      Texas Bar No. 24002583
      Ricardo J. Bonilla
      Texas Bar No. 24082704
      Aaron P. Pirouznia
      Texas Bar No. 24098958
      Alexander H. Martin
      Texas Bar No. 24091828
      mcnabnay@fr.com
      rbonilla@fr.com
      pirouznia@fr.com
      martin@fr.com
      **FISH & RICHARDSON P.C.**
      1717 Main Street, Suite 5000
      Dallas, Texas 75201
      (214) 747-5070 (Telephone)
      (214) 747-2091 (Facsimile)

      **ATTORNEYS FOR DEFENDANT**
      **LITTLE CAESAR ENTERPRISES, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy has been electronically filed using the CM/ECF filing system on March 4, 2024, which automatically sends email notifications to all counsel of record and which will permit viewing and downloading of same from the CM/ECF system.


*/s/ Neil J. McNabnay*
Neil J. McNabnay